# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-00052-SCT

### GANNETT RIVER STATES PUBLISHING COMPANY, INC. d/b/a THE CLARION-LEDGER

*v.*

### ENTERGY MISSISSIPPI, INC.

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2004 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERT B. McDUFF |
| ATTORNEYS FOR APPELLEE: | JAMES KEITHLY CHILD, JR. |
| | HENDERSON S. HALL, JR. |
| | CHARLES EDWIN ROSS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/17/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Gannett River States Publishing Company, Inc., d/b/a The Clarion Ledger ("Gannett") filed a request with the Mississippi Public Service Commission ("MPSC") to disclose the amount Entergy Mississippi, Inc. ("Entergy") was charging Nissan for electrical service at its automobile manufacturing plant in Madison County, Mississippi. Entergy filed suit against the MPSC and Gannett to prevent the MPSC's disclosure of the terms of an "Agreement for Electrical Service" ("Agreement") between Entergy and Nissan, which required and received the MPSC's approval. The suit was filed in the Chancery Court of the First Judicial District

of Hinds County. Following trial, the chancellor found that the Agreement contained confidential information protected under the Mississippi Public Records Act and was exempt from disclosure. Therefore, Entergy's motion for declaratory and injunctive relief was granted.

**FACTS**

¶2. Entergy provides electrical service to forty-five counties in Mississippi. In 2000, Entergy entered into negotiations with Nissan to encourage Nissan to locate an automobile manufacturing plant in Madison County. An agreement to supply electrical service to the plant was eventually reached. The parties designated the Agreement and its terms as confidential. The Agreement was approved by the MPSC as required by Miss. Code Ann. Section 77-3-35(1).[1] Specifically, the MPSC found "that the Agreement between the Company and Nissan should be approved by this Commission as being in the public interest." The terms of the private Agreement, including the charge for electrical service, were not publicly disclosed.

¶3. While reporting on Nissan's arrival in Madison County, Gannett began investigating the amounts that utilities were charging Nissan for their services. Gannett filed a written request to the MPSC, pursuant to the Mississippi Public Records Act of 1983, to obtain the amount Entergy would charge Nissan for electrical service. Pursuant to regulations, the MPSC

---

[1]Miss. Code Ann. Section 77-3-35(1) requires MPSC approval of special contracts between utilities and high volume users, but allows those contracts to be entered into without reference to rates or other provisions. By contrast, Entergy uses rates established by the MPSC for most of its customers, as determined in rate proceedings before the MPSC. Miss. Code Ann. §§ 77-3-37 & -39.

notified Entergy of Gannett's request and informed Entergy that it would release the information in thirty days unless Entergy obtained an injunction blocking such disclosure.[2]

¶4. Exercising its legislatively granted right, Entergy filed suit against MPSC, its executive secretary, and Gannett seeking a protective order to enjoin MPSC from disclosing the information to Gannett. The chancellor entered an agreed order granting Entergy's motion for a preliminary injunction to prevent disclosure of any documents related to the Agreement prior to a trial on the merits. Gannett subsequently filed a motion seeking to dissolve the preliminary injunction.

¶5. At trial, Entergy called witnesses who testified that the charges were part of a "special contract" for a specific consumer. Witnesses for Entergy further testified that high volume customers, who typically require that a potential contract be confidential before negotiations even begin, are often charged reduced and publicly undisclosed amounts based on their anticipated large energy consumption. Additionally, Entergy witnesses testified that obtaining such lucrative contracts allowed Entergy to maintain lower rates for smaller customers. Finally, Entergy witnesses opined that the disclosure of special contract terms would harm

---

[2]Rule 4D of the MPSC's Public Utilities Rules of Practice and Procedure states, in part:

> [a]ny document filed with the Commission and alleged to contain trade secrets or confidential commercial or financial information subject to the protection of any applicable law or court decision shall be clearly designated as such on its face or accompanying cover letter at the time of filing. Upon request for copies of any documents so designated, the Commission shall notify the person or utility that filed the document. Thirty (30) days after such notice the document will be made available for public inspection pursuant to the terms of this rule unless the filing party shall have obtained a court order protecting such records as confidential pursuant to Miss. Code Ann. Section 25-61-9.

Entergy twofold *in futuro*. First, by enabling other electrical utilities to underbid Entergy in its attempts to secure high volume industrial customers for Entergy's area of service. Second, present Entergy users furnished with confidential commercial or financial information would seek more attractive terms, even though some present users do not present the same profit potential as those receiving Entergy's lowest charges.

¶6. Gannett offered two witnesses. The first witness, a retired economics professor, opined that he was not aware of any economically feasible reason why Entergy would need to keep the terms of its special contracts confidential. The second witness, a reporter, testified about the accuracy of articles concerning Nissan.

¶7. The chancellor found that while the Entergy-Nissan Agreement was not exempt from disclosure simply because it was labeled a "special contract," the Agreement did contain "confidential commercial and financial information" protected under Miss. Code Ann. Sections 25-61-9(1) and 79-23-1(2), and, thus, was exempt from disclosure. Specifically, the chancellor stated, "[t]he Court has reviewed the documents *in camera* and is convinced that disclosure of such documents would result in a loss of competitive edge in future negotiations." Accordingly, the chancellor denied Gannett's motion to dissolve the preliminary injunction and enjoined any party from releasing any of the information at issue to the newspaper or its agents.

¶8. Aggrieved, Gannett appeals the ruling below.

**STANDARD OF REVIEW**

¶9.     To reverse the ruling of the trial court requires a de novo finding that the chancellor erroneously interpreted or applied the law, *see* **Gannett River States Publ'g Corp. v. City of Jackson**, 866 So. 2d 462, 465 (Miss. 2004) (citing **Bank of Miss. v. Hollingsworth**, 609 So. 2d 422, 424 (Miss. 1992)), or that the chancellor's findings of fact were not supported by "substantial, credible, and reasonable evidence." **City of Jackson v. Perry**, 764 So. 2d 373, 376 (Miss. 2000). Finding no evidence of either in the record before us, we affirm the chancellor's judgment.

**ANALYSIS**

**I.     Whether the Chancellor Erred in Failing to Order Disclosure of the Charge for Electrical Service that the MPSC Approved under the Entergy-Nissan Agreement.**

¶10.    Miss. Code Ann. Section 25-61-9(1) provides:

> [r]ecords furnished to public bodies by third parties which contain *trade secrets or confidential commercial or financial information* shall *not* be subject to inspection, examination, copying or reproduction under this chapter *until* notice to said third parties has been given, *but* such records shall be released within a reasonable period of time *unless* the said third parties shall have obtained a *court order protecting such records as confidential.*

Miss. Code Ann. Section 25-61-9(1) (emphasis added). Concerning public utilities, Miss. Code Ann. Section 79-23-1(1) and (2) also addresses the disclosure vel non of information submitted to public bodies. It reads as follows:

> (1) [c]*ommercial and financial information of a proprietary nature required to be submitted to a public body*, as defined by paragraph (a) of Section 21-61-3, by a firm, business, partnership, association, corporation, individual or other like entity, shall be *exempt* from the provisions of the Mississippi Public Records Act of 1983; *provided, however*, that nothing herein shall be construed to deny access to such information submitted to a regulatory agency by a public

5

utility that is related to the *establishment of, or changes in, rates regulated by such agency*.

(2) [*n*]*othing in this section* shall be construed to deny a public utility the right to protect *trade secrets or confidential commercial or financial information, as provided in subsection (1) of Section 25-61-9*.

Miss. Code Ann. § 79-23-1(1) & (2) (emphasis added).

¶11. Gannett argues unpersuasively that subsections (1) and (2) are harmonized by interpreting them to protect confidential information from disclosure with the exception of utility rates and that the statute requires that utility rates be disclosed regardless of whether they are of a confidential nature. To follow Gannett's logic would require this Court to ignore the plain language of the statutes, which this Court in good conscience cannot do. *See **Bailey v. Almefty***, 807 So. 2d 1203, 1206 (Miss. 2001) ("The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein. Where the statute is plain and unambiguous there is no room for construction ... ."). In subsection (1), the Legislature conspicuously did not include the words *trade secrets and confidential* commercial or financial information or refer to Section 25-61-9, as it did in subsection (2); but rather the legislature utilized the words commercial and financial information *of a proprietary nature* in subsection (1). "Proprietary" means "held as the property of a private owner,"[3] and is clearly distinguishable from "trade secrets or confidential ... information."[4] In short, subsections (1) and (2) are, in fact, distinctively different.

---

[3]Webster's New International Dictionary 1819 (3rd ed. 1986).

[4]Under the Mississippi Uniform Trade Secrets Act, a "trade secret" means:

information, including a formula, pattern, compilation, program, device, method, technique or process, that:

6

¶12.    Unquestionably Miss. Code Ann. Section 79-23-1(1) permits the disclosure of "commercial and financial information of a proprietary nature" as it relates to the "establishment of, or changes in rates, regulated by" the MPSC.    However, equally clear subsection (2) declares that nothing in this section shall be construed to deny a public utility the right to protect "*trade secrets or confidential* commercial or financial information ... ." The obvious dissimilarity in terms used by the Legislature in subsection (1) vis-a-vis subsection (2), was not addressed by Gannett in its briefs, nor is it mentioned in the dissent. Indeed, it is a distinction with a difference.

¶13.    The chancellor correctly found that Miss. Code Ann. Section 79-23-1(2) exempts "trade secrets or confidential commercial or financial information" from disclosure.    The Entergy-Nissan Agreement was agreed upon, and expressly identified as, a confidential document pursuant to Rules 4D and 4I of the MPSC's Public Utilities Rules of Practice and

---

> (I) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
> (II) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Miss. Code Ann. Section 75-26-3.  *See also* **Marshall v. Gipson Steel, Inc.**, 806 So. 2d 266, 270 (Miss. 2002); **Fred's Stores, Inc. v. M&H Drugs, Inc.**, 725 So. 2d 902, 908 (Miss. 1998).    Moreover, whether information is of a confidential commercial or financial nature is a "broader field of inquiry than whether [information] meets the statutory definition of a trade secret," and, therefore, a wider array of information may be classified as confidential under that standard.  **Caldwell & Gregory, Inc. v. Univ. of Southern Miss.**, 716 So. 2d 1120, 1123 (Miss. Ct. App. 1998).

Procedure.[5] The Agreement was then furnished to the MPSC,[6] which approved it.[7] Thereafter Gannett requested the information. Following the procedures of Miss. Code Ann. Section 25-61-9(1), Entergy obtained a court order protecting the requested terms of the Agreement as confidential. Miss. Code Ann. Section 25-61-9(1) and Miss. Code Ann. Section 79-23-1(1) and (2) were adopted by the Legislature to protect the public interest and the interests of parties to agreements.

¶14. The chancellor found that Entergy provided evidence, testimonial and otherwise, that the terms of the Agreement with Nissan were confidential. Generally, the words "confidential commercial or financial information" are to be interpreted using "the common and ordinarily accepted meaning of the terms." *Caldwell & Gregory*, 716 So. 2d at 1123. Entergy produced substantial, credible, and reasonable evidence that disclosing the information contained in the Agreement would compromise Entergy's ability to offer competitive prices to other large users, cripple its ability to negotiate with existing and new customers, and jeopardize Entergy's ability to use lucrative high-volume user contracts to keep the rates of smaller users lower.[8]

---

[5]*See* footnote 2.

[6]For approval only, not modification, under the terms of the Agreement.

[7]*See* Miss. Code Ann. Section 77-3-35(1) and Rule 6.W. of the MPSC's Public Utilities Rules of Practice and Procedure.

[8]As one of Gannett's witnesses stated, "[i]nformation is market power."

¶15.   Moreover, the charges for service at issue are not "rates."[9]   Entergy contends that the charges for service it bills Nissan is not a "rate" as statutorily defined by Miss. Code Ann. Section 77-3-3(e).[10]   Entergy asserts that because the charge for service is not offered to the public, as required by the definition of a "rate" in Miss. Code Ann. Section 77-3-3(e), then the charge for service in the Agreement is not a "rate." This Court agrees.

¶16.   The word "public" has a plain and unambiguous meaning.   "Public" as a noun is defined as "[t]he people as a whole."[11]   "Public" defined as an adjective is "accessible to or shared by all members of the community."[12]   The charge for service was neither offered to the people as a whole nor accessible to or shared by all members of the community.   Instead, the amount charged for the electrical service was privately negotiated between Entergy and Nissan, and the agreed-upon charge was available only to Nissan, not to the general public or any other

---

[9]The dissent fails to accept the mootness of a "rate" discussion unless it is first established that Miss. Code Ann. Section 79-23-1(2) is *not* distinctively different from Miss. Code Ann. Section 79-23-1(1).   Therefore, we address "rates" only in response to the dissent, not because the issue is case dispositive.

[10]Miss. Code Ann. Section 77-3-3(e) provides that the term "rate" includes:

> every compensation, charge, fare, toll, rental and classification, or the formula or method by which such may be determined, or any of them, demanded, observed, charged or collected by any public utility for any service, product or commodity described in this section, *offered by it to the public*, and any rules, regulations, practices or contracts relating to any such compensation, charge, fare, toll, rental or classification; however, the term "rate" shall not include charges for electrical current furnished, delivered or sold by one public utility to another for resale.

(Emphasis added).

[11]Webster's New International Dictionary 1836 (3rd ed. 1986).

[12]*Id.*

9

customers. The dissent uses a separate, non-inclusive clause to buttress its position while ignoring the succinctly clear modifier contained in the same clause of the sentence, "offered by it to the public." No evidentiary dispute exists that this charge is *not* offered by Entergy to the public. Accordingly, the amount Entergy charges Nissan for electrical services does not meet the statutory definition of a "rate" under Miss. Code Ann. Section 77-3-3(e). Thus, it is inappropriate to treat the charge as a "rate" within the context of Miss. Code Ann. Section 79-23-1.

¶17. The plain and unambiguous language of Miss. Code Ann. Section 79-23-1, the application of strict construction to the language concerning exceptions to disclosure, and the finding that the charges Entergy bills Nissan are not rates collectively support the conclusion that Entergy should not be required to disclose the terms of the Agreement, as those terms were determined to be "trade secrets or confidential commercial or financial information" by the parties involved, the MPSC, and the chancery court. The dissent fails to declare otherwise, because the record is without evidentiary support to do so.

¶18. Based on the record before us, this Court finds that the chancellor did not err. The dissent undermines its position by its excursion into legislative intent by commingling "commercial and financial information of a proprietary nature" with "trade secrets or confidential commercial or financial information" when the language is clearly distinguishable; suggesting a public policy of "the public's right to know" when the wisdom or folly of the pertinent legislation is strictly within the constitutional power of the Legislature; failing to acknowledge the absence of substantive underlying facts; and ignoring "offered by it to the public" in defining "rate."

**CONCLUSION**

¶19. This Court concludes that the learned chancellor did not err in finding that Miss. Code Ann. Section 79-23-1(2) exempts trade secrets and confidential commercial or financial information from disclosure under the Mississippi Public Records Act. Accordingly, this Court affirms the chancellor's judgment.

¶20. **AFFIRMED**.

**SMITH, C.J., WALLER AND COBB, P.JJ., AND DICKINSON, J., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, J. DIAZ, J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, DISSENTING:**

¶21. Because I find that the price which Nissan pays Entergy for its electrical service is a "rate" and thus subject to public disclosure under Miss. Code Ann. Section 79-23-1(1), I respectfully dissent. While the majority fails to address the issue of whether the price Entergy charges Nissan for electricity under the special contract is a rate, I am convinced that resolution of that issue is central to the correct disposition of this case.

*Whether the Price Entergy Charges Nissan for Electricity Constitutes a "Rate."*

¶22. Entergy contends that the chancellor's ruling should be upheld, arguing in part that the fee it charges Nissan under a special contract is not a "rate" under Miss. Code Ann. § 77-3-3(e),[13] which is generally subject to public disclosure. Entergy essentially argues that since

---

[13] A "rate" is defined by statute as follows:

The term "rate" means and includes every compensation, charge, fare, toll, rental and classification, or the formula or method by which such may be determined, or any of them, demanded, observed, charged or collected by any public utility for any service, product or commodity described in this section, offered by it

11

the price of electricity it negotiated with Nissan is not "offered by it to the public," that price is not a "rate" contemplated by statute and would therefore not be subject to any disclosure requirement under Miss. Code Ann. § 79-23-1(1). I am unpersuaded by this argument because it strains the clear language of the statute. Entergy's proposed reading of Section 77-3-3(e) ignores the final clause of that subsection, which states that "the term 'rate' shall not include charges for electrical current furnished, delivered or sold by one public utility to another for resale." Where, as here, the statute is not ambiguous, we will "apply the statute according to its plain meaning" rather than engage in statutory construction. *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992). Giving Miss. Code Ann. § 77-3-3(e) its plain meaning, the statute provides that the price one public utility charges another public utility for the resale of electricity (however termed) is not to be considered a "rate" but that any other "compensation, charge, fare, toll, rental and classification" is to be considered a "rate." Our Legislature had the opportunity to specifically exclude the fee that a public utility charges a large manufacturer (such as Nissan) under a special contract from being considered a "rate," yet it declined to do so by limiting that exclusion to charges by "one public utility to another for resale." Thus, I find no merit to Entergy's argument that the price it charges Nissan for electricity is not a "rate."

> *Whether Miss. Code Ann. Section 79-23-1(1) Mandates Disclosure of the Rate Entergy Charges Nissan for Electricity.*

---

to the public, and any rules, regulations, practices or contracts relating to any such compensation, charge, fare, toll, rental or classification; however, the term "rate" shall not include charges for electrical current furnished, delivered or sold by one public utility to another for resale.

Miss. Code Ann. § 77-3-3(e).

¶23. In deciding whether Entergy is required to disclose the "rate" it charges Entergy for electricity, this Court must look at The Mississippi Public Records Act of 1983, Miss. Code Ann. §§ 25-61-1 to -17 (Rev. 2003), which provides the basic framework for the inspection of public records. While public records are generally open to the public for inspection, the Public Records Act does protect certain types of documents from public access. Miss. Code Ann. Section 25-61-9 (1) (Rev. 2003)[14] specifically states that public records furnished by third parties containing trade secrets or confidential commercial or financial information are not subject to inspection, examination, copying or reproduction unless the third parties have been given notice. The release of such documents to the public is allowed after a reasonable time unless the third parties obtain a court order that protects the documents from disclosure due to their confidential nature. Subsection (2) of this statute allows for the redaction of exempt material from a document which is determined to contain both exempt and nonexempt information.

¶24. Concerning public utilities, Miss. Code Ann. § 79-23-1(1) and (2) address the disclosure of public records and confidential information which are exempt from disclosure:

---

[14] Miss. Code Ann. § 25-61-9 provides in part:

(1) Records furnished to public bodies by third parties which contain trade secrets or confidential commercial or financial information shall not be subject to inspection, examination, copying or reproduction under this chapter until notice to said third parties has been given, but such records shall be released within a reasonable period of time unless the said third parties shall have obtained a court order protecting such records as confidential.

(2) If any public record which is held to be exempt from disclosure pursuant to this chapter contains material which is not exempt pursuant to this chapter, the public body shall separate the exempt material and make the nonexempt material available for examination and/or copying as provided for in this chapter.

13

(1) Commercial and financial information of a proprietary nature required to be submitted to a public body, as defined by paragraph (a) of Section 25-61-3, by a firm, business, partnership, association, corporation, individual or other like entity, shall be exempt from the provisions of the Mississippi Public Records Act of 1983; provided, however, that nothing herein shall be construed to deny access to such information submitted to a regulatory agency by a public utility that is related to the establishment of, or changes in, rates regulated by such agency.

(2) Nothing in this section shall be construed to deny a public utility the right to protect trade secrets or confidential commercial or financial information, as provided in subsection (1) of Section 25-61-9.

Miss. Code Ann. §§ 79-23-1(1) and (2) (Rev. 2001). Gannett argues that subsections (1) and (2) are harmonized by interpreting them to protect confidential information from disclosure with the exception of utility rates and that the statute mandates the disclosure of utility rates, regardless of whether a public utility (such as Entergy) holds such information out as being confidential in nature. Entergy rebuts this argument from Gannett and claims that the chancellor was correct in preventing any terms of its special contract with Nissan from being disclosed, on the basis that Section 79-23-1(2) protects any information deemed to be "trade secrets or confidential commercial or financial information" from public disclosure requirements.

¶25. When interpreting statutes, "[c]ourts have a duty to give statutes a practical application consistent with their wording, unless such application is inconsistent with the obvious intent of the legislature." *Marx v. Broom*, 632 So. 2d 1315, 1318 (Miss. 1994) (citation omitted). If a statute is unambiguous, then courts should simply apply the statute according to its plain meaning. *See Sullivan*, 612 So. 2d at 1089. Section 79-23-1(1) makes clear that nothing contained in the statutory language should be interpreted to prevent the disclosure of information concerning regulated utility rates.

14

¶26. This Court's holding in *Mississippi Dep't of Wildlife, Fisheries, and Parks v. Mississippi Wildlife Enforcement Officers' Ass'n, Inc.*, 740 So. 2d 925 (Miss. 1999), offers further guidance on issues of disclosure. There, an employee association requested a list of names and compensation time of the Department's employees pursuant to the Public Records Act. *Id.* at 928-29. In upholding the chancellor's ruling that the Department was required to disclose the requested information, this Court specifically stated that "there is to be a liberal construction of the general disclosure provisions of a public records act, whereas a standard of strict construction is to be applied to the exceptions to disclosure" with the recognition that "any doubt concerning disclosure should be resolved in favor of disclosure." *Id*. at 936. We further stated that an exception to a statute "must appear in the language the legislature employed" and "cannot be created by construction." *Id.* at 932.

¶27. In applying these rules of construction to Miss. Code Ann. § 79-23-1 in the instant case, I find that the general language of subsection (2), which prevents disclosure of trade secrets or confidential commercial or financial information, does not negate the specific command of subsection (1), which mandates the disclosure of rate information submitted to the MPSC. The majority's attempt to define the terms of Section 79-23-1(2) and/or interpret that section, in order to protect Entergy from the mandatory "rate" disclosure of Section 79-23-1(1), is not persuasive that the Legislature intended otherwise. *See Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945) (Judge Learned Hand stating that "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary . . . .").

¶28. Just because the "rate" that Entergy charges Nissan is contained in a special contract (which may in fact contain other material which is exempt from disclosure) does not change

the fact that disclosure of rate information is mandatory under Miss. Code Ann. § 79-23-1(1). Requiring Entergy to disclose rate information does not preclude it from having other confidential information in the special contract redacted pursuant to Miss. Code Ann. § 25-61-9(2). This balances the competing interests of the public's right to know about the decisions of the Public Service Commission and Entergy's right to protect confidential proprietary information.

¶29. Today's majority opinion strays from this Court's presumption in favor of requiring disclosure of public records, *see Mississippi Wildlife*, 740 So. 2d at 936 (noting that doubts regarding disclosure should be resolved in favor of disclosure); *Roberts v. Miss. Republican Party State Executive Comm*., 465 So. 2d 1050, 1053 (Miss. 1985) (recognizing that intent of Public Records Act is to provide all citizens with access to the records of all public governmental bodies); *Harrison County Dev. Comm'n v. Kinney*, 920 So. 2d 497, 502 (Miss. Ct. App. 2006) (noting that questions of disclosure are liberally construed while applying strict construction standard to exceptions to disclosure), and ignores a statute which mandates disclosure of the "rate" information at issue here. Because I cannot take that course of action in good conscience, I respectfully dissent.

**CARLSON, J., JOINS THIS OPINION.**